## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| LESLIE WILLIAMS,<br>    *Plaintiff*, | ) | 3:23-CV-725 (SVN) |
| | ) | |
| v. | ) | |
| | ) | |
| WILLIAM MULLIGAN, *et al.*,<br>    *Defendants*. | ) | November 29, 2023 |

### INITIAL REVIEW ORDER

Plaintiff Leslie Williams, a sentenced inmate currently incarcerated at Cheshire Correctional Center ("Cheshire"), filed this action *pro se* pursuant to 42 U.S.C. § 1983. He names four defendants: Deputy Commissioner William Mulligan, District Administrator Rodriguez, Warden Reis, and Classification Officer Ciaro. Plaintiff seeks damages as well as declaratory and injunctive relief from Defendants in their individual and official capacities.

The Prison Litigation Reform Act requires that federal courts review complaints brought by prisoners seeking relief against a governmental entity or an officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). Upon review, the Court must dismiss the complaint, or any portion of the complaint, that is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. §§ 1915(e)(2)(B), 1915A(b).

The Court has thoroughly reviewed all factual allegations in the complaint and conducted an initial review pursuant to 28 U.S.C. § 1915A.[1]  Based on this initial review, the Court orders as follows.

## I.    FACTUAL BACKGROUND

While the Court does not set forth all of the facts alleged in Plaintiff's complaint, it summarizes his basic factual allegations here to give context to its ruling below.

Plaintiff is serving a sentence of life imprisonment without the possibility of parole. Compl., ECF No. 1 ¶ 70.  In 2008, Plaintiff was arrested on "high profile" charges.  *Id.* ¶¶ 8–9. He was incarcerated in a high security facility and placed on special needs status.  *Id.* ¶ 9.

In 2011, during a court visit, Plaintiff opened his restraints with a homemade handcuff key. *Id.* ¶ 11.  He was charged with attempted escape and placed on high security status.  *Id.* ¶ 12.  His escape risk score was raised from 2 to 4 after the high security status hearing.  *Id.* ¶ 14.  Later that year, Plaintiff pleaded guilty to attempted escape and capital felony charges.  *Id.* ¶ 15.

In 2014 or 2015, Plaintiff was moved to Hartford Correctional Center.  *Id.* ¶ 16.  In 2016, he was removed from special needs status based on good behavior and moved to general population.  *Id.* ¶ 17.  Because he still was classified as high security status, he was not eligible for certain jobs and programs and contact visits.  *Id.*

In 2017, Plaintiff was transferred to Cheshire Correctional Institution.  *Id.* ¶ 18.  Plaintiff

---

[1] It is well-established that "*[p]ro se* complaints 'must be construed liberally and interpreted to raise the strongest arguments that they suggest.'"  *Sykes v. Bank of Am.*, 273 F.3d 399, 403 (2d Cir. 2013) (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006)); *see also Tracy v. Freshwater*, 623 F.3d 90, 101–02 (2d Cir. 2010) (discussing special rules of solicitude for *pro se* litigants).  Notwithstanding this liberal interpretation, however, a *pro se* complaint will not survive dismissal unless the factual allegations meet the plausibility standard.  *See, e.g.*, *Fowlkes v. Ironworkers Local 40*, 790 F.3d 378, 387 (2d Cir. 2015).  A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citations omitted).  A complaint that includes only "'labels and conclusions,' 'a formulaic recitation of the elements of a cause of action' or 'naked assertion[s]' devoid of 'further factual enhancement,'" does not meet the facial plausibility standard.  *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 557 (2007)).

got a job as housing unit tierman/shower cleaner.  *Id.* ¶ 19.  Because he was still on high security status, he was not permitted a job outside of his housing unit.  *Id.*  Plaintiff's job pays $.75 per day, for a total of $21.00 per month.  *Id.* ¶ 20.  All jobs that have higher pay required the Plaintiff to work outside of his housing unit.  *Id.* ¶ 22.

In 2018 or 2019, commissary prices increased because of inflation, but prison pay did not increase.  *Id.* ¶ 21.  In 2022, commissary prices again increased, and prison pay again did not increase with them.  *Id.* ¶ 23.

Later in 2022, Plaintiff was removed from high security status.  He immediately applied for jobs outside of his housing unit.  *Id.* ¶ 24.

A supervisor told Plaintiff that he was on the list for a job in the commissary, but she needed approval from classification officials before he could be awarded the job.  *Id.* ¶ 25.  After waiting for two months, Plaintiff learned that the job had been given to another inmate because of Plaintiff's high escape risk score.  *Id.* ¶ 28.  When Plaintiff asked Officer Ciaro why his escape risk score had not been reduced when he was removed from high security status, she told him that departmental policy was that escape risk scores could be raised but never lowered.  *Id.* ¶ 29.

During this time, Plaintiff also investigated the possibility of getting married while in prison.  *Id.* ¶ 26.  He learned that he could get married but could not have conjugal visits or consummate the marriage.  *Id.* ¶ 27.

Also during this time, Plaintiff had a tooth that was very sharp and causing discomfort and occasional cuts on his tongue.  *Id.* ¶ 30.  The tooth was crooked and was causing other teeth to become misaligned.  *Id.*  The dentist determined that the problem could not be solved by just removing one tooth, and would require further procedures.  *Id.* ¶ 31.  However, as the tooth was not unhealthy, departmental policy prohibited removal of the tooth.  *Id.* ¶ 31–32.  Departmental

policy restricted dentists from performing treatments or procedures that weren't "of necessity." *Id.* ¶ 31.

In 2021, the Department of Correction implemented a program offering commutation opportunities to prisoners serving lengthy sentences. *Id.* ¶ 72. The notice of the program stated only that an applicant must (1) be a sentenced prisoner with more than 25 years remaining on his sentence; (2) have served at least 10 years of the sentence; and (3) have no pending cases or appeals. *Id.* ¶ 73. Plaintiff's application was denied, and he was told that, under a department policy, the program was not available to inmates convicted of capital offenses. *Id.* ¶ 74.

## II. JOINDER

Plaintiff includes eleven claims for relief under the Eighth and Fourteenth Amendments, which he splits into three categories.

First, he alleges four substantive due process claims: (1) Defendants Mulligan, Rodriguez, Reis, and Ciaro created or enforced a policy of never lowering his escape score which bars him from higher-paying prison jobs; (2) Defendants Mulligan, Rodriguez, and Reis created or enforced policies preventing him from having conjugal visits to consummate a marriage; (3) Defendants Mulligan and Reis created or enforced a policy denying him early release opportunities; and (4) Defendant Reis enforced a policy that denied him necessary dental treatment.

Second, he alleges four deliberate indifference claims: (5) Defendants Mulligan, Rodriguez, Reis, and Ciaro were deliberately indifferent to his need for basic elements of hygiene and clothing by failing to control the rising commissary prices, raise worker pay, or afford him access to higher paying prison jobs; (6) Defendants Mulligan, Rodriguez, and Reis were deliberately indifferent to his reasonable expectation to consummate a marriage and procreate by failing to provide him access to conjugal visits; (7) Defendants Mulligan and Reis were

4

deliberately indifferent to Plaintiff being subjected to discrimination when he was denied access to programs which would permit inmates serving lengthy sentences to have early release opportunities; and (8) Defendant Reis was deliberately indifferent to his need for dental treatment.

Third, Plaintiff alleges three equal protection claims: (9) Defendants Mulligan, Rodriguez, Reis, and Ciaro created or enforced policies that denied him equal access to jobs affording higher pay opportunities; (10) Defendants Mulligan, Rodriguez, and Reis created or enforced policies that denied him equal access to the conjugal visit program; and (11) Defendants Mulligan and Reis created or enforced policies that denied him equal access to programs which afforded prisoners early release opportunities.

As is clear from the recitation of the claims, Plaintiff asserts various alleged violations of law related to his escape risk score, including that it prevents him from obtaining higher-paying jobs. Separately, he alleges constitutional violations stemming from the disallowance of conjugal visits; claims related to being denied early release opportunities due to the nature of his conviction; and claims related to Defendants' failure to provide him with necessary dental treatment, all of which appear unrelated to his claims related to his inability to work at a higher-paying job due to his escape risk score.

Federal Rule of Civil Procedure 20(a)(2) permits joinder of multiple defendants in one action if: first, "any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions and occurrences"; and second, "any question of law or fact common to all defendants will arise in the action." The Court may "drop a party" or "sever any claim against a party" that it finds to be improperly joined. Fed. R. Civ. P. 21. Misjoinder of unrelated claims against multiple defendants is a particular concern in prisoner-initiated cases "because of the applicability of the three strikes

5

and filing fee provisions of the Prison Litigation Reform Act." *Urbanski v. Dep't of Corr.*, No. 3:18-cv-1323 (VLB), 2019 WL 6683047, at *8 (D. Conn. Dec. 5, 2019); *see also Staton v. Lamont*, No. 3:22-CV-854 (VLB), 2022 WL 17251863, at *3–*4 (D. Conn. Nov. 28, 2022) (severing unrelated claims).

With respect to the first requirement of Rule 20(a), what constitutes the same "transaction" or "occurrence" is approached on a case-by-case basis. *Dixon v. Scott Fetzer Co.*, 317 F.R.D. 329, 331 (D. Conn. 2016). Whether claims arise out of the same transaction depends on the logical relationship between the claims and whether the "essential facts" of the claims "are so logically connected that considerations of judicial economy and fairness dictate that all the issues be resolved in one lawsuit." *Harris v. Steinem*, 571 F.2d 119, 123 (2d Cir. 1978).[2] The same transaction requirement "means that there must be some allegation that the joined defendants conspired or acted jointly." *Arista Records LLC v. Does 1-4*, 589 F. Supp. 2d 151, 154 (D. Conn. 2008) (internal quotation marks omitted). The second requirement—that a question of law or fact common to all defendants will arise in the action—is met where "the court finds that there is 'substantial' overlap in questions of law or fact across the claims." *Ardolf v. Weber*, 332 F.R.D. 467, 479 (S.D.N.Y. 2019).

In this case, the Court finds that Plaintiff has improperly joined unrelated claims in a single lawsuit. First, Plaintiff alleges claims related to his escape risk score precluding him from obtaining higher-paying jobs. These claims appear unrelated, however, to Plaintiff's claims that he is unlawfully being denied conjugal visits, early release opportunities, and adequate dental care. The latter three sets of claims are not logically related to his first set of claims, and there does not

---

[2] Although *Harris* arose in the context of Rule 13(a), which applies to compulsory counterclaims, "[i]n construing the term 'transaction or occurrence' under Rule 20, many courts have drawn guidance from the use of the same term in Rule 13(a)." *Barnhart v. Town of Parma*, 252 F.R.D. 156, 160 (W.D.N.Y. 2008) (citation omitted).

appear to be a question of law or fact that would overlap.  Although the same set of Defendants is sued, there are no allegations that they acted in concert with respect to all of the alleged violations of law.  It therefore appears Plaintiff is attempting to litigate four lawsuits worth of unrelated claims in this single case.

As Plaintiff's claims related to the effects of his escape risk score are most thoroughly developed in the complaint, the Court will consider those to be the only claims properly alleged in this case, and analyzes whether they are sufficient to move past the initial review stage below. Plaintiff's claims related to denial of conjugal visits (Claims Two, Six, and Ten), early release opportunities (Claims Three, Seven and Eleven), and adequate dental treatment (Claims Four and Eight), are severed and dismissed from this action, without prejudice to Plaintiff's right to bring those claims in separately filed cases.  *See Staton*, 2022 WL 17251863, at *4; *Ibbison v. Quiros*, No. 22-CV-1163 (SVN), 2023 WL 1766440, at *8 (D. Conn. Feb. 3, 2023) (severing counts that involve different defendants who were not alleged to act jointly); *Jusino v. Quiros*, No. 3:21-CV-620 (SRU), 2021 WL 5111908, at *4 (D. Conn. Nov. 3, 2021) (severing count based on events that occurred before and were unrelated to events underlying other counts of the complaint).

III.    DISCUSSION

The Court proceeds to assess whether Plaintiff's claims related to the effects of his escape risk score should proceed past initial review.

A.    Defendant Capacity and Relief Sought

First, the Court examines the capacities in which Defendants are sued and the relief sought against them.  Plaintiff sues all Defendants in their individual and official capacities.  ECF No. 1 at 1–2.  He seeks declaratory and injunctive relief, as well as compensatory and punitive damages,

against all Defendants.  *Id.* at 15–17.  Regarding declaratory relief, Plaintiff seeks various declarations that Defendants violated his federal constitutional rights.  *Id.* at 16.

To the extent Plaintiff asserts official capacity claims for monetary damages against Defendants, such claims are dismissed as barred by the Eleventh Amendment because all of the Defendants are state employees.  *See Kentucky v. Graham*, 473 U.S. 159, 169 (1985).  In addition, any claims for injunctive relief may not be asserted against Defendants in their individual capacities, as they would not have the authority to provide such relief in their individual capacities. *See Kuck v. Danaher*, 822 F. Supp. 2d 109, 143 (D. Conn. 2011); *Patterson v. Lichtenstein*, No. 3:18-cv-2130 (MPS), 2020 WL 837359, at *2 (D. Conn. Feb. 20, 2020).  Lastly, the Eleventh Amendment does not permit the issuance of judgments against state officers "declaring that they violated federal law in the past."  *P.R. Aqueduct & Sewer Auth. v. Metcalf & Eddy*, 506 U.S. 139, 146 (1993); *see also Green v. Mansour*, 474 U.S. 64, 68 (1985) ("We have refused to extend the reasoning of *Young* . . . to claims for retrospective relief.").

Accordingly, all claims for monetary damages against Defendants in their official capacities, all claims for injunctive relief against Defendants in their individual capacities, and all claims for declaratory relief against Defendants are dismissed pursuant to 28 U.S.C. § 1915A(b)(1).

## B.  Fourteenth Amendment:  Substantive Due Process

Plaintiff alleges that the policies that prevent him from having a higher paying job violate his right to substantive due process.

"Substantive due process rights safeguard persons against the government's exercise of power without any reasonable justification in the service of a legitimate governmental objective." *Matzell v. Annucci*, 64 F.4th 425, 436 (2d Cir. 2023) (internal citation omitted).  The Second

Circuit has held that "[s]ubstantive due process standards are violated only by conduct that is so outrageously arbitrary as to constitute a gross abuse of governmental authority." *Id.* (quoting *Natale v. Town of Ridgefield*, 170 F.3d 258, 263 (2d Cir. 1999) (internal quotation marks omitted)). To prevail on his substantive due process claims, Plaintiff "must (1) 'identify the constitutional right at stake' and (2) 'demonstrate that the state action was so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience.'" *Id.* (quoting *Hurd v. Fredenburgh*, 984 F.3d 1075, 1087 (2d Cir.), *cert. denied*, 142 S. Ct. 109 (2021)).

Plaintiff alleges that his escape risk score precludes him from consideration for jobs outside of his housing unit, some of which have a higher rate of pay than those available inside his housing unit.

Plaintiff's allegations cannot meet the first prong of the test for substantive due process because Plaintiff does not have a constitutionally protected right to a higher paying job, the job of his choice, or any job at all; nor has he pointed to a Connecticut statute or regulation providing such a right. *See Gill v. Mooney*, 824 F.2d 192, 194 (2d Cir. 1987) (holding that there is no constitutional right to a job without underlying New York state law mandating jobs for prisoners); *Ashby v. Quiros*, No. 3:17-CV-916 (CSH), 2018 WL 2324081, at *9 (D. Conn. May 22, 2018) ("The Constitution of the United States does not create a property or liberty interest in prison employment.") (internal citation omitted); *Burton v. Salerno*, No. 3:20-CV-1926 (VAB), 2021 WL 3493621, at *9 (D. Conn. Aug. 9, 2021) (same).

Thus, because Plaintiff has not sufficiently alleged that a constitutional right is at stake, Plaintiff's substantive due process claim relating to his job, Claim One, is dismissed pursuant to 28 U.S.C. § 1915A(b)(1).[3]

### C.   Fourteenth Amendment:  Procedural Due Process

Although captioned as a substantive due process claim, Plaintiff's claim that the escape risk score policy is unconstitutional could also be construed as a procedural due process claim, in that it alleges the escape risk policy is "unconstitutional on its face especially since the plaintiff is not afforded a vehicle by the state which would allow him to seek to have his escape risk score lowered," thereby depriving him of the right to higher-paying jobs outside of his housing unit without process.  *See* ECF No. 1 ¶ 44.  Thus, the Court will analyze Claim One under procedural due process standards in addition to substantive due process.[4]

"A claim alleging procedural due process violations must show that [the] plaintiff enjoyed a protected interest, and [the] defendants' deprivation of that interest occurred without due process of law."  *Taylor v. Rodriguez*, 238 F.3d 188, 191 (2d Cir. 2001); *see also Otero v. Purdy*, No. 3:19-CV-01688 (VLB), 2021 WL 4263363, at *13 (D. Conn. Sept. 20, 2021) (citing *Swarthout v. Cooke*, 562 U.S. 216, 219 (2011), for the proposition that the court "must analyze a claim of violation of procedural due process by (1) asking whether there exists a liberty or property interest of which a person has been deprived, and (2) if so, whether the procedures followed by the State were constitutionally sufficient").

---

[3] Plaintiff argues that the escape risk policy does not meet the reasonably related test articulated by the Supreme Court in *Turner v. Safley*, which provides that "when a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests."  482 U.S. 78, 89 (1987).  However, the Court need only evaluate a policy under the *Turner* test if it first determines that a constitutional right is at stake.  *See id.*; *see also Cromwell v. Coughlin*, 773 F. Supp. 606, 610 (S.D.N.Y. 1991).  Where, as here, no such right is at stake, the Court need not proceed to the remaining steps of the *Turner* test.

[4] The Court analyzes the viability of a procedural due process claim despite that Plaintiff appears to disclaim reliance on such a theory, in order to give the complaint as liberal a reading as possible.  *See* ECF No. 1, ¶ 37.

A state "may under certain circumstances create liberty interests which are protected by the Due Process Clause." *Sandin v. Conner*, 515 U.S. 472, 483–84 (1995). In the context of incarceration, procedurally protected liberty interests "will be generally limited to freedom from restraint which . . . imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Id.* at 484. Accordingly, to determine if an incarcerated plaintiff has a protected liberty interest in freedom from a particular restraint, the court considers whether the restraint "is atypical and significant," and whether "the state has created the liberty interest by statute or regulation." *Tellier v. Fields*, 280 F.3d 69, 80 (2d Cir. 2000) (citations and internal quotation marks omitted).

Here, Plaintiff has sufficiently alleged for purposes of initial review that the particular restraint at issue (his limited freedom of movement due to his escape risk score) is atypical and significant, in that he alleges that (1) his escape risk score should have been lowered when he was removed from high security status in late 2022, *see* ECF No. 1 ¶ 24; (2) he has had an elevated escape risk score for over ten years, *see id.* ¶ 11–12, despite the fact that he has had no attempted escapes or other escape-related issues since 2011; and (3) his escape risk score has caused him hardship in terms of being denied access to higher-paying jobs which presumably members of the general prison population can access. *See Tellier*, 280 F.3d at 80 (allowing procedural due process claim where conditions of confinement "differ[ed] markedly from those in the general population," and noting that the ultimate determination of whether alleged deprivation of freedom was "atypical and significant" involved factual determinations inappropriate to resolve on a motion to dismiss); *see also Proctor v. LeClaire*, 846 F.3d 597, 613 (2d Cir. 2017) (noting that Plaintiff had raised triable factual issue of whether his procedural due process rights were violated where it appeared he would never be released from administrative segregation due to "two-decade-old escape").

As to the existence of a state-created liberty interest, the interest in having a higher-paying job or having the job of one's choice is not a recognized interest under the Constitution or Connecticut law, as described above. Nevertheless, although Plaintiff has not cited to a provision of law from which he may claim a liberty interest in being afforded access to jobs outside of his housing unit, the Court is not prepared to conclude at this early stage that no such state-created liberty interest exists.[5] Assuming for purposes of this decision that such a liberty interest exists, Plaintiff has sufficiently alleged that insufficient process was provided, since he alleges that no process at all was provided and that he was told "escape scores can be raised but they [can] never be lowered." *See* ECF No. 1 ¶ 29.

Thus, for purposes of initial review, the Court finds Plaintiff's allegations sufficient to raise a claim for a violation of procedural due process as to the escape risk score policy. Claim One can proceed as a procedural due process claim to allow for further development of the record. Defendants remain free to file a motion to dismiss this claim, should they believe it fails to state a claim for relief.

The next question is against which Defendants such a claim may proceed. A plaintiff seeking monetary damages from a defendant must allege facts that establish the personal involvement of that defendant in the alleged constitutional violation. *See Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) ("personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.").

---

[5] The Court notes that, although not directly on point, the Connecticut Department of Correction Classification Manual requires a "regular schedule of annual and semi-annual reclassification reviews," which take into account factors such as escape risk. *See* Connecticut Department of Correction Objective Classification Manual at 3, available at https://portal.ct.gov/-/media/DOC/Pdf/PDFReport/ClassificationManualLibraryCopypdf.pdf; *see also Giraldo v. Kessler,* 694 F.3d 161, 164 (2d Cir. 2012) (court may "take judicial notice of relevant matters of public record."). From the face of the complaint, it appears that Plaintiff has had no such reclassification review, at least since he was removed from high security status in late 2022. *See* ECF No. 1 ¶ 24.

Here, the Court will allow Claim One to proceed for monetary damages against Defendants Mulligan, Rodriguez, Reis, and Ciaro in their individual capacities and injunctive relief claims in their official capacities, because Plaintiff has adequately alleged, for purposes of initial review, that Defendants were involved in creating and enforcing the escape risk policy at issue. *See* ECF No. 1 ¶¶ 3, 4, 5, 6, 29; *Tangreti v. Bachmann*, 983 F.3d 609, 616, 617 n.4 (2d Cir. 2020) (noting that one basis of supervisory liability that survives *Iqbal* is that "the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom").

### D.  Eighth Amendment:  Deliberate Indifference

Next, Plaintiff contends that Defendants were deliberately indifferent to his need for access to basic elements of hygiene and clothing, insofar as they would not allow him to work in a higher-paying job due to his escape risk score, and therefore it is difficult for him to purchase hygiene and clothing items that are expensive in the prison commissary.

"The Eighth Amendment protects prisoners from cruel and unusual punishment by prison officials." *Crawford v. Cuomo*, 796 F.3d 252, 256 (2d Cir. 2015) (citing *Wilson v. Seiter*, 501 U.S. 294, 297 (1991)).  In order to establish an Eighth Amendment violation, an inmate must establish that (1) "'the plaintiff is incarcerated under conditions posing a substantial risk of serious harm,' and (2) that the prison official had a 'sufficiently culpable state of mind,' which in 'prison-conditions cases' is 'one of deliberate indifference to inmate health or safety.'"  *Morgan v. Dzurenda*, 956 F.3d 84, 89 (2d Cir. 2020) (citation omitted) (cleaned up).

Plaintiff contends that Defendants Mulligan, Rodriguez, Reis, and Ciaro were deliberately indifferent to his need for basic elements of hygiene and clothing by failing to control the rising commissary prices, increase inmate wages, and/or afford him access to higher paying prison jobs.

In support of this claim, Plaintiff lists various prices of commissary goods (ramen soup, a pack of t-shirts, and sneakers) and states how long he would have to forego purchasing food or soap in order to buy these goods.  ECF No. 1 ¶¶ 94, 95, 96.  He also states that inmates who have prison jobs are expected to buy their own toothpaste and deodorant, presumably from the commissary, although he acknowledges that inmates are provided with one bar of soap every two weeks.  *See id.* ¶ 98.

As an initial matter, inmates have no constitutional right to "purchase items from the prison commissary."  *Vega v. Rell*, No. 3:09-CV-737 VLB, 2011 WL 2471295, at *25 (D. Conn. June 21, 2011) (citing cases); *Baltas v. Erfe*, No. 3:19CV1820 (MPS), 2020 WL 1915017, at *26 (D. Conn. Apr. 20, 2020) (dismissing Eighth Amendment claim based on restrictions to commissary purchasing).

Even aside from this, though, Plaintiff has not sufficiently alleged a claim for deliberate indifference to health and safety because his allegations do not support his claim that he was deprived of necessary hygiene products and clothing.  Although he states that he has to buy toothpaste and deodorant, he does not state that he is unable to do so.  *See id.* ¶ 98.  Plaintiff notes that the facility provides inmates with soap, which undermines his allegations that he does not have sufficient access to hygiene products and that he would have to forego *purchasing* soap in order to buy t-shirts and sneakers.  *See* ECF No. 1 ¶¶ 96–97, 98.  He also fails to state why the difficulty in purchasing t-shirts and sneakers from the commissary means he has been deprived of access to basic clothing, as he does not allege what clothing is or is not provided by the facility.  *Cf. Baltas*, 2020 WL 11915017, at *29 (allowing Eighth Amendment Claim for deprivation of clothing where inmate was not provided with hat, coat, or gloves during outdoor recreation in cold weather).

14

Moreover, Plaintiff's Eighth Amendment claim fails because it is duplicative of his Fourteenth Amendment claim.  His Eighth Amendment claim, like his Fourteenth Amendment claim, is premised on his contention that he has been unconstitutionally denied access to higher-paying jobs because of his escape risk score.  Further, it seeks the same general relief of being freed from the escape risk score policy.  *See generally* ECF No. 1 at 16.  Thus, in addition to not sufficiently alleging an Eighth Amendment conditions of confinement claim, Plaintiff's Claim Five is also dismissed because it is duplicative of Claim One.  *See Brown v. Plansky*, 24 F. App'x 26, 28 (2d Cir. 2001) (summary order) (holding that district court properly dismissed duplicative claims because, "[a]s part of its general power to administer its docket, a district court may stay or dismiss a suit that is duplicative of another federal court suit.") (citation and internal quotation marks omitted); *Torres v. McGrath*, No. 3:15CV1558(VLB), 2016 WL 1948806, at *4 (D. Conn. May 3, 2016) (dismissing Fourteenth Amendment claim as "duplicative" of Eighth Amendment claim).

### E.   Fourteenth Amendment:  Equal Protection

Finally, Plaintiff claims that depriving him of the opportunity for a higher-paying job due to his escape risk score violates his equal protection rights.  "[T]he Equal Protection Clause bars the government from selective adverse treatment of individuals compared with other similarly situated individuals if 'such selective treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious bad faith intent to injury a person.'"  *Bizzaro v. Miranda*, 394 F.3d 82, 86 (2d Cir. 2005) (quoting *LeClair v. Saunders*, 627 F.2d 606, 609-10 (2d Cir. 1980) (emphasis omitted)).  Equal protection does not mandate identical treatment for each individual but, rather, requires that similarly situated persons be treated the same.  *Muhmmaud v. Murphy*, 632 F. Supp. 2d 171, 178 (D. Conn. 2009).

Thus, Plaintiff must allege facts showing that he was treated differently from other similarly situated inmates and that the different treatment was based on one of these reasons. *See Nicholson v. Hannah*, No. 3:20-cv-209(JAM), 2020 WL 3086022, at *5 (D. Conn. June 10, 2020) (citations omitted).

Plaintiff does not allege that he was treated differently because of his membership in a protected class; rather, Plaintiff brings his equal protection claim as a "class of one."  ECF No. 1 ¶ 41.  To state a claim under this theory, Plaintiff must show that "he has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment."  *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000).  In the Second Circuit, persons asserting a class of one equal protection claim "must show an extremely high degree of similarity between themselves and the persons to whom they compare themselves."  *Clubside, Inc. v. Valentin*, 468 F.3d 144, 159 (2d Cir. 2006) (citation omitted).  This high degree of similarity is required "to provide an inference that the plaintiff was intentionally singled out for reasons that so lack any reasonable nexus with a legitimate governmental policy that an improper purpose— whether personal or otherwise—is all but certain."  *Id.* (citation and internal quotation marks omitted).  In other words, Plaintiff must demonstrate the existence of a "comparator"—someone who is "prima facie identical"—who was treated differently.  *Silvera v. Connecticut Dep't of Corr.*, 726 F. Supp. 2d 183, 198 (D. Conn. 2010).

Plaintiff does not identify any comparator for his equal protection claim, much less one that is *prima facie* identical to him.  He does not identify any inmate with a similar risk score who was permitted to have a job outside of his housing unit, or who was given some process by which to challenge his escape risk score, when Plaintiff was not.  As Plaintiff has not alleged facts

supporting a class of one equal protection claim, Claim Nine is dismissed pursuant to 28 U.S.C. § 1915A(b)(1).

### ORDERS

Plaintiff's claims related to denial of conjugal visits (Claims Two, Six, and Ten), early release opportunities (Claims Three, Seven and Eleven), and adequate dental treatment (Claims Four and Eight), are severed and dismissed from this action, without prejudice to Plaintiff's right to bring those claims in separately filed cases.

Plaintiff's deliberative indifference claim regarding the escape risk score policy (Claim Five) is dismissed pursuant to 28 U.S.C. § 1915A(b)(1). Plaintiff's equal protection claim regarding the escape risk score policy (Claim Nine) is also dismissed pursuant to 28 U.S.C. § 1915A(b)(1). In addition, all claims for retrospective declaratory relief, for monetary damages against Defendants in their official capacities, and for injunctive relief against Defendants in their individual capacities, are dismissed.

The case can proceed on one claim: Claim One (*procedural* due process claim regarding the escape risk score policy) against Defendants Mulligan, Rodriguez, Reis, and Ciaro.

Plaintiff has two options as to how to proceed in response to this Initial Review Order:

**<u>OPTION ONE</u>**

If Plaintiff wishes to proceed immediately on the procedural due process claim against Defendants Mulligan, Rodriguez, Reis, and Ciaro, and only as set forth above, he may do so without further delay. If Plaintiff selects this option, he shall file a notice on the docket by **January 3, 2024,** informing the court that he elects to proceed with service against these Defendants on this claim. The court will then begin the effort to serve process on these Defendants.

**OPTION TWO**

Alternatively, if Plaintiff wishes to attempt to replead any of the claims asserted in his Complaint that have been dismissed in order to attempt to state a viable claim, he may file an Amended Complaint by **January 3, 2024**.  An Amended Complaint, if filed, will completely replace the Complaint and the court will not consider any allegations made in the Complaint in evaluating any Amended Complaint.  The court will review any Amended Complaint after filing to determine whether it may proceed to service of process on any defendants named therein.  If Plaintiff elects to file an Amended Complaint, the Complaint this Initial Review Order addressed will <u>not</u> proceed to service of process on any defendant.

If the court receives no response from Plaintiff by **January 3, 2024**, the court will presume that Plaintiff wishes to proceed on the Complaint as to the claims permitted to go forward in this Initial Review Order, and Plaintiff will have to show good cause if he seeks to amend the complaint in any manner in the future.

**Change of Address**. If Plaintiff changes his address at any time during the litigation of this case, Local Rule 83.1(c)2 provides that he **MUST** notify the court.  Failure to do so can result in the dismissal of the case.  Plaintiff must give notice of a new address even if he is incarcerated. Plaintiff should write PLEASE NOTE MY NEW ADDRESS on the notice.  It is not enough to just put the new address on a letter without indicating that it is a new address.  If Plaintiff has more than one pending case, he should indicate all the case numbers in the notification of change of address.  Plaintiff should also notify Defendants or counsel for Defendants of his new address.

SO ORDERED at Hartford, Connecticut, this 29th day of November, 2023.

*/s Sarala V. Nagala*
SARALA V. NAGALA
UNITED STATES DISTRICT JUDGE