UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| LESLIE WILLIAMS,<br>   *Plaintiff*, | : | |
| | : | 3:23-CV-725 (SVN) |
| v. | : | |
| | : | |
| WILLIAM MULLIGAN, et al.,<br>   *Defendants*. | : | May 21, 2025 |
| | : | |

### RULING ON DEFENDANTS' MOTION TO DISMISS

Plaintiff Leslie Williams is a sentenced inmate currently housed at Cheshire Correctional Institution.[1] He brings this civil rights action against four defendants in both their individual and official capacities. *See* Compl., ECF No. 1, at 1–2.

After the Court's initial review, two claims remain. *See* Initial Review Order, ECF No. 15 (permitting only Plaintiff's Fourteenth Amendment procedural due process claim to proceed); Order, ECF No. 18 (granting Plaintiff's motion for reconsideration and permitting an Eighth Amendment conditions of confinement claim to proceed). These claims are asserted against Defendants Deputy Commissioner William Mulligan, District Administrator Rodriguez, Warden Reis, and Classification Officer Ciarlo ("Defendants"). *See id*.

Defendants have moved to dismiss only the procedural due process claim[2] on the grounds that Plaintiff failed to state a cognizable claim, and, in any event, Defendants are entitled to

---

[1] The Court may take judicial notice of matters of public record. *See, e.g.*, *Mangiafico v. Blumenthal*, 471 F.3d 391, 398 (2d Cir. 2006); *Kelley v. Quiros*, No. 3:22-cv-1425 (KAD), 2023 WL 1818545, at *2 n.1 (D. Conn. Feb. 8, 2023) (taking judicial notice of state prison website inmate locator information). The publicly available Department of Correction website shows that Plaintiff was sentenced on March 1, 2012, to a life sentence. *See* https://www.ctinmateinfo.state.ct.us/detailsupv.asp?id_inmt_num=250996 (last accessed May 16, 2025).

[2] In their reply, Defendants claim that Plaintiff is inappropriately attempting to revive his Eighth Amendment claim. *See* Defs.' Reply, ECF No. 60 at 1–2. Defendants are mistaken. Although Defendants are correct that the Court initially dismissed Plaintiff's Eighth Amendment claim, *see* Initial Review Order, ECF No. 15, the Court thereafter reconsidered that ruling and reinstated the claim, *see* Order, ECF No. 18. Therefore, Plaintiff's Eighth Amendment claim is properly before the Court and remains pending in the case because Defendants have not moved to dismiss it.

qualified immunity. *See* Defs.' Mot. to Dismiss, ECF No. 57.

For the following reasons, Defendants' motion to dismiss is GRANTED.

I.     FACTUAL BACKGROUND[3]

The Court accepts the following allegations in Plaintiff's complaints as true for purposes of deciding Defendant's motion to dismiss. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Plaintiff is serving a sentence of life imprisonment without the possibility of parole after he was arrested for and convicted of capital offenses, leading to his being categorized as a "special needs" inmate and being housed in a high security facility. Compl. ¶¶ 8–10.

In 2011, Plaintiff attended a court hearing and, while at the courthouse, opened and removed his handcuffs using a homemade key. *Id.* ¶ 11. As a result, he was charged with attempted escape and placed on special needs and high security statuses; his high security status in turn raised his escape risk score from a 2 to a 4 after a high security status hearing. *Id.* ¶¶ 12–14. Plaintiff subsequently pleaded guilty to attempted escape. *Id.* ¶ 15.

A few years later, in 2014 or 2015, Plaintiff was moved to the Hartford Correctional Center. *Id.* ¶ 16. While there, he was removed from special needs status due to sustained good behavior, and he returned to general population. *Id.* ¶ 17. He remained, however, categorized as high security status, which rendered him ineligible for certain jobs, programs, and contact visits. *Id.*

In 2017, Plaintiff was transferred to Cheshire Correctional Institution ("Cheshire"). *Id.* ¶ 18. Upon his transfer, Plaintiff got a job as a housing unit tierman/shower cleaner, earning him $0.75 a day or $21.00 a month. *Id.* ¶¶ 19–20. Around 2018 or 2019, and again in 2022, the Cheshire commissary prices increased due to inflation, but Plaintiff's wages remained the same. *Id.* ¶¶ 21–23.

---

[3] Because Defendants' motion to dismiss is limited to Plaintiff's Fourteenth Amendment claim, the Court in turn limits its summary of the relevant facts accordingly.

Plaintiffs' high security status prohibited him from obtaining a job outside his housing unit, which may have earned him higher pay. *Id*. ¶¶ 19–20, 22. When Plaintiff was removed from high security status in 2022, he applied for jobs outside of his housing unit. *Id*. ¶¶ 24–25. For one particular job in the commissary, Plaintiff was "on the list" to receive the job, but the placement was held up awaiting "approval from classification." *Id*. ¶ 25. After about two months of awaiting word from classification, Plaintiff learned that another inmate received the commissary job that he had "been promised," "due to a problem with the plaintiff's escape risk score." *Id*. ¶ 28. Plaintiff learned that his high escape risk score impacted his eligibility for the position. *Id*. ¶¶ 28–29. When Plaintiff asked Officer Ciarlo why his escape risk score had not been reduced when he was removed from high security status, she informed him that departmental policy instructed that escape risk scores could be raised but never lowered ("escape score policy"). *Id*. ¶ 29.

## II.   LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a defendant may move to dismiss a case or cause of action for failure to state a claim upon which relief can be granted. When determining whether a complaint states a claim upon which relief can be granted, detailed allegations are not required, but the complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *See Iqbal*, 556 U.S. at 677–78 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. This plausibility standard is not a "probability requirement," but rather imposes a standard higher than "a sheer possibility that a defendant has acted unlawfully." *Id.* In undertaking this analysis, the Court must "draw all reasonable inferences in [the plaintiff's] favor, assume all well-pleaded factual allegations to be

true, and determine whether they plausibly give rise to an entitlement to relief." *Faber v. Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011).

The Court is not "bound to accept conclusory allegations or legal conclusions masquerading as factual conclusions," *Rolon v. Henneman*, 517 F.3d 140, 149 (2d Cir. 2008), and "a formulaic recitation of the elements of a cause of action will not do," *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). Consequently, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555). Ultimately, "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

These pleading standards apply to self-represented parties. It is true that courts are under an obligation to extend "special solicitude" to *pro se* litigants and ought to read their pleadings "to raise the strongest arguments that they suggest." *Fowlkes v. Ironworkers Loc. 40*, 790 F.3d 378, 387 (2d Cir. 2015) (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 477 (2d Cir. 2006)) (internal quotation marks omitted). But a *pro se* complaint still must meet the basic pleading standards outlined above to survive a motion to dismiss. *Id.* (citing *Twombly*, 550 U.S. at 570).

### III.  DISCUSSION

For the reasons discussed below, Plaintiff's Fourteenth Amendment due process claim is dismissed, but Plaintiff's Eighth Amendment conditions of confinement claim may proceed. More specifically, the Court finds that Plaintiff fails to establish the requisite liberty interest necessary to establish a due process violation. And because the Court concludes that Plaintiff has not alleged a plausible Fourteenth Amendment due process claim, the Court does not address Defendants'

attempted invocation of qualified immunity.[4]

Plaintiff's procedural due process claim can be summarized as follows: Plaintiff's elevated escape score renders him ineligible for certain jobs, programs, and privileges within the prison. ECF No. 1, ¶¶ 19–20, 22. He wishes to challenge this score because the score is now, in his opinion, stale in that it relies on conduct that occurred over a decade ago. *Id*. ¶¶ 11–14. But prison policy dictates that escape scores are never lowered, even if other classification categories are altered. *Id*. ¶ 29.

For the escape score policy to amount to a procedural due process violation, Plaintiff must first allege a liberty or property interest in his escape score, such that due process would be required for matters pertaining to it. "[T]he Due Process Clause provides that certain substantive rights—life, liberty, and property—cannot be deprived except pursuant to constitutionally adequate procedures." *Cleveland Bd. of Educ. v. Loudermill,* 470 U.S. 532, 541 (1985). A procedural due process analysis "proceeds in two steps: [a court] first ask[s] whether there exists a liberty or property interest of which a person has been deprived, and if so . . . whether the procedures followed by the State were constitutionally sufficient." *Swarthout v. Cooke,* 562 U.S. 216, 219 (2011) (*per curiam*).

Liberty interests may arise from either the Due Process Clause itself or "from an expectation or interest created by state laws or policies." *Wilkinson v. Austin,* 545 U.S. 209, 221 (2005). States "may under certain circumstances create liberty interests which are protected by the Due Process Clause." *Sandin v. Conner*, 515 U.S. 472, 483–84 (1995). For prisoners, such liberty interests "will be generally limited to freedom from restraint which, while not exceeding

---

[4] Neither would a successful qualified immunity defense be dispositive of all claims in this proceeding. Qualified immunity is only available as a defense to claims seeking monetary relief against individual defendants, not claims seeking injunctive or declaratory relief against defendants in their official capacities. *See Frank v. Relin,* 1 F.3d 1317, 1327 (2d Cir. 1993) (citing *Hafer v. Melo,* 502 U.S. 21, 22–23 (1991)). Plaintiff here pursues both avenues.

the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force . . . nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Id.* at 484 (internal citations omitted).

Plaintiff has a protected liberty interest in his escape score only if the state created one through statute or regulation and the deprivation of that interest caused Plaintiff to suffer an atypical and significant hardship. *See Tellier v. Fields,* 280 F.3d 69, 80–81 (2d Cir. 2000); *Stewart v. Ayala*, No. 3:20-CV-1938 (CSH), 2022 WL 4356467, at *7 (D. Conn. Sept. 20, 2022) (noting that, the prison context "involves persons whose liberty interests have already been severely restricted because of their confinement," and thus prisoners must demonstrate atypical and significant hardship to show a cognizable deprivation of liberty). It is well settled that "prisoners generally do not have a protected liberty interest in classifications that impact their eligibility to participate in rehabilitative programs." *Taylor v. Levesque*, 246 F. App'x 772, 774 (2d Cir. 2007); *see also Moody v. Daggett*, 429 U.S. 78, 88 n.9 (1976) (expressly rejecting claim that prisoners have "legitimate or constitutional entitlement" to classification and rehabilitative programs, so as to invoke due process protections). And "Connecticut has not granted inmates, by regulation or statute, a protected interest in their security classification" because "the matter is committed to the discretion of the Commissioner of Corrections." *Taylor*, 246 F. App'x at 774; *see also Green v. Martin*, 224 F. Supp. 3d 154, 177 (D. Conn. 2016) (affirming that "prisoners have no constitutional rights to a particular security classification"); *Hamer v. Arnone*, No. 3:11-CV-279 (SRU), 2011 WL 2680836, at *3 (D. Conn. July 7, 2011) (concluding that Connecticut prisoners "do not have a protected liberty interest in their classifications because the Commissioner of Correction has discretion to classify prisoners"). Under these cases, it is clear that Plaintiff does not have a liberty interest in his escape risk score.

6

In its Initial Review Order, the Court noted that the Connecticut Department of Correction Classification Manual requires a "regular schedule of annual and semi-annual reclassification reviews," which take into account factors such as escape risk. *See* ECF No. 15 at 12, n.5; Connecticut Department of Correction Objective Classification Manual at 3, available at https://portal.ct.gov/-/media/DOC/Pdf/PDFReport/ClassificationManualLibraryCopypdf.pdf. It is not clear that this language creates a liberty interest. *See Fernandez v. Armstrong*, No. 3:02-CV-2252 (CFD), 2005 WL 733664, at *10 (D. Conn. Mar. 30, 2005) (explaining that "mandatory language in a prison directive or regulation does not in and of itself create a liberty interest").

But even assuming, without deciding, that the State created a liberty interest through that language, Plaintiff has not pleaded a resultant atypical and significant hardship. The Second Circuit has made clear that even total ineligibility for rehabilitative programming does not constitute an atypical and significant hardship. *See Taylor,* 246 F. App'x at 774 (2d Cir. 2007); *Stewart*, 2022 WL 4356467, at *7 (noting that inmates generally have no constitutionally protected interest in an assignment to a particular prison job or participation in a particular program). Following this logic, the Court cannot find that Plaintiff's inability to get a higher-paying, out-of-unit job on account of his escape risk score qualifies as an atypical and significant hardship—even in light of his allegation of rising commissary prices.

Without a liberty interest in his escape score, even an allegedly improper score cannot support a procedural due process violation. *See Taylor,* 246 F. App'x at 774. And because any deprivation of access to the jobs from which his high escape score precluded him cannot amount to an atypical or significant hardship, Plaintiff has not pleaded a plausible claim to relief. *See Green*, 224 F. Supp. 3d at 177. Accordingly, Plaintiff's Fourteenth Amendment due process claim must be dismissed.

In light of its conclusion that Plaintiff has not adequately pleaded a Fourteenth Amendment due process claim, the Court need not reach Defendants' arguments concerning personal involvement in the alleged constitutional violation and qualified immunity.[5]

## IV.     CONCLUSION

For the reasons explained in this ruling, Defendants' motion to dismiss Plaintiff's Fourteenth Amendment due process claim is **GRANTED**. The case shall proceed only on Plaintiff's Eighth Amendment claim as Defendants did not challenge it.

The deadline for dispositive motions related to Plaintiff's Eighth Amendment claim is reset to **June 18, 2025**. *See* ECF No. 84 (noting that the deadline for dispositive motions will be reset after resolution of Defendants' motion to dismiss).

**SO ORDERED** at Hartford, Connecticut, this 21st day of May, 2025.

           */s/ Sarala V. Nagala*
           SARALA V. NAGALA
           UNITED STATES DISTRICT JUDGE

---

[5] In his opposition to Defendants' motion to dismiss, Plaintiff argues that he was not given notice that he would be "subjected to an ad infintum classification" under the "Classification Procedure policy." ECF No. 58 at 8–9. While this argument might be relevant to whether any purported procedures were adequate, the Court does not reach the question of what process is due unless it first finds a protected liberty interest. As the Court has held Plaintiff has no protectable liberty interest in his escape risk score, the Court does not reach the question of whether the procedures (or lack thereof, in Plaintiff's view) were constitutionally adequate. *See Swarthout,* 562 U.S. at 219.